**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1163**

---

PARKER O'NEIL WIDEMAN,

　　　　　Plaintiff – Appellant,

　　v.

INNOVATIVE FIBERS LLC; STEIN FIBERS LTD,

　　　　　Defendants – Appellees.

---

**No. 23-1167**

---

RILEY C. DRAPER,

　　　　　Plaintiff – Appellant,

　　v.

INNOVATIVE FIBERS LLC; STEIN FIBERS LTD,

　　　　　Defendants – Appellees.

---

**No. 23-1169**

---

WILLIAM F. DOUGLASS; JESSICA L. DOUGLASS,

　　　　　Plaintiffs – Appellants,

　　v.

INNOVATIVE FIBERS LLC; STEIN FIBERS LTD,

        Defendants – Appellees.

---

Appeals from the United States District Court for the District of South Carolina, at Spartanburg.  Judge Donald C. Coggins, Jr., District Judge.  (7:22-cv-00418-DCC; 7:22-cv-00419-DCC; 7:22-cv-00420-DCC)

---

Argued:  January 23, 2024                    Decided:  May 2, 2024

---

Before DIAZ, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

---

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in which Chief Judge Diaz and Judge Niemeyer joined.

---

**ARGUED:**  Bert Glenn Utsey, III, CLAWSON FARGNOLI UTSEY, LLC, Charleston, South Carolina, for Appellants.  Hamlet Sam Mabry, III, HAYNSWORTH SINKLER BOYD, PA, Greenville, South Carolina, for Appellees.  **ON BRIEF:**  Samuel R. Clawson, Jr., Christina Rae Fargnoli, CLAWSON FARGNOLI UTSEY, LLC, Charleston, South Carolina; Charles T. Slaughter, MORGAN LITIGATION GROUP, LLC, Lexington, South Carolina, for Appellants.  Patrick H. Allan, LEE LAW OFFICES, Spartanburg, South Carolina, for Appellants.  Riley C. Draper, William F. Douglass, and Jessica L. Douglass. Jonathan D. Klett, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina; Kevin Lindsay Terrell, THE WARD FIRM PA, Spartanburg, South Carolina, for Appellees.

2

RICHARDSON, Circuit Judge:

South Carolina law provides that certain workers' compensation disputes are within the exclusive cognizance of the state Workers' Compensation Commission. This means that covered employees cannot bring common-law actions, like tort claims, in state courts. But state law cannot circumscribe federal subject matter jurisdiction. So when these injured workers arrived in federal court and were met with a motion to dismiss for lack of subject matter jurisdiction, which cited the state law, a procedural mess ensued. Despite the understandable confusion about the state law's effect on federal jurisdiction, we conclude that the district court erred in dismissing the workers' complaint for lack of subject matter jurisdiction. We thus vacate that decision and remand for further proceedings.

## I.      Background

### A.      Calamity at the Spartanburg Plant

Innovative Fibers LLC and Stein Fibers Ltd. (together, "Defendants") owned and operated a plant in Spartanburg, South Carolina. That plant converted recycled plastics into polyester fibers. In June 2020, to dry the plastic material, Defendants installed two large, natural-gas-fueled ovens (sometimes called "crystallizers") in a 33-foot-tall chamber. Each oven was encased in a steel scaffolding "superstructure" that supported two platforms above the oven, providing access for maintenance and cleaning. The ovens and superstructures were located is an area known as the crystallizer room.

The drying procedure generated plastic dust that accumulated on surfaces throughout the crystallizer room. While there is significant dispute about how the room

was cleaned, Defendants' direct employees at least semi-regularly cleaned and reused the plastic dust that collected on the floor and on top of the ovens. But the dust on the superstructures was too fine to be reused and did not interfere with the manufacturing process. It was also less accessible. And the record on appeal suggests that, in the year after the ovens' installation, Defendants' direct employees cleaned the superstructures no more than twice, when the ovens were shut off for maintenance.[1]

Regardless of the dispute about cleaning, dust accumulated in the crystallizer room. And management knew that the growing accumulation of plastic dust posed a problem. After testing showed that the plastic waste was combustible, a contractor noted the danger posed by excessive combustible plastic dust throughout the area, including on the superstructures. The contractor thus recommended that Defendants hire an industrial-cleaning contractor to remove the plastic dust.

Chip Stein, co-owner of both Defendants, agreed with the contractor's recommendation—though arguably for a purpose other than workplace safety. Starting in October 2021, Stein sent the plant managers a series of increasingly frantic emails about the plastic-dust problem. He emphasized the need to clean the entire crystallizer room, including the superstructures, before an imminent insurance inspection, as a poor showing could cost Defendants over half a million dollars. As the weeks passed and Stein became increasingly unsatisfied with their progress, he recommended that Defendants engage a

---

[1] Our narrative here should not be understood to resolve any factual disputes. We provide it only to aid the reader's understanding.

third-party industrial-cleaning contractor to get the job done before the insurance inspection.

So Defendants called in a third-party contractor, VLS Recovery Services, to clean the crystallizer room starting on October 14.  Before starting the work, the VLS supervisor took photographs reflecting the same excessive plastic dust accumulation described in the earlier report.  He later testified that he had never seen that amount of dust and that he doubted the crystallizer room was cleaned daily.  After cleaning began, the supervisor noticed that an oven was still operating.  He immediately stopped work and alerted Defendants' maintenance manager that his employees would not clean above the ovens until Defendants shut them off.  Defendants refused, so VLS left the job without cleaning the superstructures.

But the insurance inspection remained impending.  Fortunately, Defendants were already negotiating with another industrial-cleaning contractor—Plaintiffs' employer, Advanced Environmental Options ("AEO").  On October 28, Defendants and AEO contracted for AEO to supply four employees and a vacuum truck to clean the crystallizer room on November 1.

Plaintiffs Parker Wideman, Riley Draper, William Douglass,[2] and a fourth AEO employee arrived at the Spartanburg plant as scheduled on November 1.  Defendants' maintenance manager escorted Plaintiffs to the crystallizer room and left them there to begin working.  Video evidence from the plant shows Plaintiffs cleaning Pompeian

---

[2] Mr. Douglass's wife, Jessica, is also a plaintiff.

amounts of plastic dust in the crystallizer room. They swept and shoveled the dust from the tops of the ovens and the superstructures onto the floor, where one of the workers vacuumed it up. When a worker swept one large batch of dust, the dust brushed against the oven and immediately ignited, engulfing the oven in a fireball. Moments later, the entire room was aflame.

The inferno caused Plaintiffs to suffer severe, disfiguring "burns to their bodies of 75%, 83%, and 43% respectively." J.A. 714. According to the South Carolina Occupational Safety and Health Administration, the "ovens were kept on during the cleaning process per [Defendants'] management request to not interrupt production at the plant." J.A. 716.

## B.    Procedural History

Plaintiffs sued Defendants in state court in January 2022, alleging negligence under state common law. Defendants removed the case to federal court, invoking federal diversity jurisdiction. Defendants then performed a (permissible) *volte-face* and moved to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In their motion, they argued that Plaintiffs were "statutory employees" covered by The South Carolina Workers' Compensation Law, S.C. Code Ann. § 42-1-10 *et seq.* (the "Law"). And they maintained that, because the Law prohibits statutory employees from suing in tort in state courts, § 42-1-540, it also deprives federal courts of subject matter jurisdiction over such claims. They alleged that Plaintiffs must instead submit their claims to South Carolina's Workers' Compensation Commission.

6

The district court granted Defendants' motion on December 16, 2022. It agreed with Defendants that "[t]he decision as to whether a worker directly employed by one entity is the statutory employee of another is a jurisdictional question resolved by the court . . . on motion to dismiss under Rule 12(b)(1)." J.A. 1068. And it found by a preponderance of the evidence that Plaintiffs were, indeed, Defendants' statutory employees barred from suit by the Law. The district court therefore dismissed the dispute for lack of subject matter jurisdiction.

## II.    Discussion

On appeal, Plaintiffs argue that they were not Defendants' statutory employees and that, because of this, the district court improperly dismissed their suit for lack of subject matter jurisdiction. We agree that the district court erred, but for a different reason. Whether a federal court has subject matter jurisdiction over a case is wholly determined by federal law. While states can define the substantive rights asserted in federal diversity jurisdiction, they cannot strip federal courts of subject matter jurisdiction over any category of claims. Accordingly, we hold that the district court erred in dismissing this suit for lack of subject matter jurisdiction.[3]

---

[3] Defendants argue that, even if the district court erroneously treated the Law as depriving us of jurisdiction, Plaintiffs forfeited this argument by failing to raise it. But we conclude that it is within our authority to address this issue.

The principle of party presentation often requires that we ignore errors not briefed by the parties. *See United States v. Sineneng-Smith*, 590 U.S. 371, 374–75 (2020). But "[t]he party presentation principle is supple, not ironclad." *Id.* at 376. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, (Continued)

7

"The judicial Power of the inferior federal courts extends only as far as Article III permits and Congress chooses to confer." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020). Article III of the Constitution provides that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States." Art. III, § 2, cl. 7. "Christened 'diversity jurisdiction,' this constitutional font allows for the judicial Power to flow where the citizenship of any plaintiff differs from that of any defendant." *Navy Fed.*, 972 F.3d at 352. The statutory font of diversity jurisdiction, meanwhile, provides that district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Unlike Article III jurisdiction,

---

99 (1991). And we may address a predicate legal question that disposes of this appeal, even if the parties erroneously agree on its answer and dispute only subsequent, dependent issues. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (alteration in original) (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)); *cf. Van Emburgh ex rel. Est. of Van Emburgh v. United States*, 95 F.4th 795, 800 (4th Cir. 2024) (exercising discretion to excuse a party's failure to raise an argument in favor of subject matter jurisdiction).

These principles permit us to look past the forfeiture here. Plaintiffs allege that the district court improperly dismissed their suit for lack of subject matter jurisdiction by finding that they were statutory employees under the Law. Logically antecedent to this question is whether the Law restricts our subject matter jurisdiction in the first place. To ignore this question would be to affirm a proposition of law that we know to be demonstrably false (as we will explain shortly). *See United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in the judgment) (explaining that a court "need not render judgment on the basis of a rule of law whose nonexistence is apparent on the face of things, simply because the parties agree upon it"). And it would fly in the face of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Rather than doing so, we choose to address it and dispose of the appeal on this basis.

§ 1332(a)(1) requires diversity to be "complete," meaning that each plaintiff must hail from a different state than each defendant. *Navy Fed.*, 972 F.2d at 352.

This dispute satisfies all the requirements of diversity jurisdiction. The parties enjoy complete diversity: Plaintiffs are from North and South Carolina, while Defendants are from New York. And the amount-in-controversy between them exceeds $75,000.[4] So the district court possessed subject matter jurisdiction over this dispute.

Despite this clear application of established principles, the district court concluded that it lacked subject matter jurisdiction over this suit because Plaintiffs' claims fall under South Carolina's Workers' Compensation Law. The Law creates a "quid pro quo arrangement" for certain work-related injuries by which "an 'employee receives the right to swift and sure compensation in exchange for giving up the right to sue in tort.'" *Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 190 (4th Cir. 2022) (quoting *Harrell v. Pineland Plantation, Ltd.*, 523 S.E.2d 766, 772 (S.C. 1999)); *see also Parker v. Williams & Madjanik, Inc.*, 267 S.E.2d 524, 526 (S.C. 1980). To solidify this bargain, the Law contains an exclusivity provision, which states that "[t]he rights and remedies granted by [the Law] . . . shall exclude all other rights and remedies . . . at common law or otherwise." S.C. Code Ann. § 42-1-540. So the exclusive remedy for employment-related injuries suffered by

---

[4] Plaintiffs' complaints did not allege an amount in controversy, likely because they first filed in state court. But in their notice of removal, Defendants alleged that the amount in controversy exceeds $75,000, and Plaintiffs did not contest that claim. When a plaintiff does not contest the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); 28 U.S.C. § 1446(c)(2). Given the allegations of serious injury involved here, Defendants have plausibly alleged an amount in controversy exceeding $75,000.

covered employees—including so-called "statutory employees"[5]—is before South Carolina's Workers' Compensation Commission. *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 n.3 (S.C. 2002) (explaining that the Law vests the Commission with "exclusive original jurisdiction" over covered claims). Applying this framework, the district court found that Plaintiffs were Defendants' statutory employees when they suffered their injuries and thus dismissed their negligence claims for lack of subject matter jurisdiction.

The parties, and thus the district court, have confused the *substantive right of action* enforced in diversity jurisdiction with a federal court's *jurisdiction* to entertain that right of action. Absent controlling federal law, federal courts sitting in diversity must look to state law for the substantive rights of the parties. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (explaining that whether a state law is substantive must be determined with reference "to the twin aims of the *Erie* Rule: discouragement of forum-shopping and avoidance of inequitable administration of the

---

[5] "Statutory employees" are not actual employees, as that word is typically understood, but "subcontractors" hired by businesses to carry out "'part of [their] trade, business or occupation.'" *Keene v. CAN Holdings, LLC*, 870 S.E.2d 156, 162–63 (S.C. 2021) (quoting *Marchbanks v. Duke Power Co.*, 2 S.E.2d 825, 836 (S.C. 1939)). The South Carolina Supreme Court recently revamped its "statutory employee doctrine" by holding that determining whether a subcontractor falls into that category requires a court to ask "what the owner decided is part of its business." *Id.* at 163. This question of "business judgment" simply asks whether, at a given time, "a business manager reasonably believes her workforce is not equipped to handle a certain job, or the financial or other business interests of her company are served by outsourcing the work." *Id.* If so, then "the [company] has legitimately defined the scope of [its] business to not include th[e] particular work" performed by those workers, and they are thus not statutory employees. *Id.*

10

laws").[6]  So when state law prohibits plaintiffs from suing to enforce a state-law right in any state court, federal courts sitting in diversity are bound to dismiss the suit for failure to state a claim.  *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) ("[A] right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case . . . ."); *Angel v. Bullington*, 330 U.S. 183, 192 (1947) (explaining that, when a federal court's jurisdiction is "invoked on grounds of diversity of citizenship, [the court] cannot give that which [the state] has withheld").  Any other result would permit the kind of forum-shopping and inequitable administration of the laws that *Erie* exists to prevent.  *See Woods*, 337 U.S. at 538; *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1318–19 (9th Cir. 1982).

But even though states can define the substantive rights that are enforced in diversity jurisdiction, they cannot limit the subject matter jurisdiction of federal courts, even in diversity cases.  Every court draws its power to hear cases and controversies from the laws of the sovereign that created it.  *Marshall v. Marshall*, 547 U.S. 293, 313–14 (2006); *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961).  As creatures of our national Union, federal courts derive their jurisdiction exclusively from Article III and federal statutes.  Thus, state law *cannot* oust federal courts of jurisdiction that they already possess pursuant to federal law.  *See, e.g.*, *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.)

---

[6] Of course, the *Erie* doctrine is not without its critics.  Many scholars have argued that *Erie* misinterpreted the Rules of Decision Act and the jurisprudential assumptions of the regime that preceded it.  *See, e.g.*, Caleb Nelson, *A Critical Guide to* Erie Railroad Co. v. Tompkins, 54 Wm. & Mary L. Rev. 921 (2013); Stephen E. Sachs, *Finding Law*, 107 Calif. L. Rev. 527 (2019).  But the Supreme Court has yet to reconsider the doctrine, so we remain bound by its teachings.

270, 286 (1871) ("Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation."); *Popp v. Archbell*, 203 F.2d 287, 288–89 (4th Cir. 1953). *Erie* may command enforcement of substantive state law in diversity cases, but it does not endow states with the power to limit the jurisdiction of federal courts under federal law. *Markham*, 292 F.2d at 718.[7]

In light of these principles, the Law cannot strip us of subject matter jurisdiction over Plaintiffs' claims. True, the Law excludes covered employees from enjoying rights or remedies at common law, confers immunity from tort suits on employers, and vests exclusive jurisdiction in the Workers' Compensation Commission. *Harrell*, 523 S.E.2d at

---

[7] We acknowledge that some of our past cases assumed that state law can limit our jurisdiction. *See Zeigler*, 54 F.4th at 194 (accepting, without discussion, that the applicability of the Law would preclude our jurisdiction); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (accepting, without discussion, that the applicability of the Virginia Workers' Compensation Act would preclude our jurisdiction). *But see Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 n.1 (4th Cir. 2015) (noting the possibility that such a dismissal should occur under Rule 12(b)(6) rather than Rule 12(b)(1)). But drive-by jurisdictional rulings are not controlling. *Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 408 (4th Cir. 2022).

Nor is a contrary result compelled by our holding in *Wiener v. AXA Equitable Life Insurance Co.*, 58 F.4th 774 (4th Cir. 2023). In *Wiener*, we held that a state statute providing for exclusive statutory remedies for a class of claims did not strip us of jurisdiction over such claims. *Id.* at 782. We reached this result by distinguishing between choice-of-forum statutes, which divest courts of jurisdiction, and choice-of-law statutes, which do not divest courts of jurisdiction. *Id.* at 782–83. And we held that because the statute governed choice of law, it did not divest our jurisdiction over the claims at issue. *Id.* at 783. But we did not address the further question of whether, even if the statute were a choice-of-forum provision, a *state* statute can legally divest *federal* courts of subject matter jurisdiction. This question is squarely before us today, and we conclude that states have no such authority.

772; *Parker*, 267 S.E.2d at 526; *Sabb*, 567 S.E.2d at 234 n.3. Those facts reflect the substantive policy of South Carolina, which, under *Erie*, we are required to enforce in diversity jurisdiction. *Cf. Byrd v. Blue Ridge Rural Electr. Coop.*, 356 U.S. 525, 534–40 (1958) (holding that whether a plaintiff was a statutory employee under South Carolina's workers' compensation law should be decided by a federal jury instead of a federal judge); *Walker v. U.S. Gypsum Co.*, 270 F.2d 857, 858–59 (4th Cir. 1959). Even so, this limitation only determines whether Plaintiffs have stated a claim upon which relief can be granted; it cannot strip us of subject matter jurisdiction that we otherwise enjoy.[8] And since this dispute satisfies the requirements of diversity jurisdiction, we conclude that the district court erred in dismissing it for lack of subject matter jurisdiction.[9]

---

[8] In so holding, we align ourselves with other courts who have similarly found that state workers' compensation statutes do not deprive federal courts of subject matter jurisdiction. *See Begay*, 682 F.2d at 1314–17; *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778–80 (7th Cir. 2002); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 798–99 (6th Cir. 2012); *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 n.5 (3d Cir. 2017).

[9] Although we sometimes affirm a district court on grounds not relied upon by the court itself, *Jusino v. Fed. of Cath. Teachers, Inc.*, 54 F.4th 95, 100 (4th Cir. 2022), we believe it would be inappropriate in this appeal to determine whether Plaintiffs have stated a claim upon which relief could be granted. The district court decided this case under Federal Rule of Civil Procedure 12(b)(1), which sometimes allows the court to go beyond the complaint and resolve disputed jurisdictional facts by a preponderance of the evidence. *See U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). But because the Law determines whether Plaintiffs have stated a valid claim for relief, its applicability should have been determined pursuant to a Rule 12(b)(6) motion, which does not permit a district court to resolve disputed questions of material fact. *Andrew v. Clark*, 561 F.3d 261, 267 (4th Cir. 2009). And in disposing of that motion, the district court might have converted the motion to a summary judgment motion, since Defendants asked the court to consider materials outside the complaint. *See* Fed. R. Civ. P. 12(d). Given these procedural complexities, we deem it more prudent to remand this case to the district court for further proceedings than to decide these questions ourselves in the first instance.

\*        \*        \*

"A State may, of course, distribute the functions of its judicial machinery as it sees fit." *Byrd*, 356 U.S. at 536.  But those choices cannot deprive a federal court of subject matter jurisdiction.  The district court's decision is thus

*VACATED AND REMANDED.*