**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1867**

———————

WAKITA DORIETY, as the Administrator for the Estate of Nasanto Antonio Crenshaw,

Plaintiff - Appellant,

v.

MATTHEW LEWIS SLETTEN, in his individual capacity pursuant to document 6, First Amended Complaint; CITY OF GREENSBORO, NORTH CAROLINA,

Defendants - Appellees.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:23−cv−00211−CCE−JEP)

———————

Argued:  May 8, 2024                                    Decided:  July 29, 2024

———————

Before WYNN and BENJAMIN, Circuit Judges, and KEENAN, Senior Circuit Judge.

———————

Affirmed in part, reversed in part, and remanded by published opinion.  Senior Judge Keenan wrote the opinion, in which Judge Wynn and Judge Benjamin joined.

———————

**ARGUED**:  Harry Martina Daniels, Jr., LAW OFFICES OF HARRY M. DANIELS, LLC, Atlanta, Georgia, for Appellant.  Patrick Michael Kane, FOX ROTHSCHILD LLP, Greensboro, North Carolina, for Appellees.  **ON BRIEF**:  Chimeaka L. White, THE WHITE LAW FIRM, PLLC, High Point, North Carolina, for Appellant.  Kip D. Nelson, Greensboro, North Carolina, La-Deirdre D. Matthews, FOX ROTHSCHILD LLP, Charlotte, North Carolina, for Appellees.

———————

BARBARA MILANO KEENAN, Senior Circuit Judge:

Nasanto Antonio Crenshaw, age 17, was shot and killed by Officer Matthew Sletten, a City of Greensboro, North Carolina, police officer who was trying to stop an allegedly stolen car that Crenshaw was driving. Crenshaw's mother, Wakita Doriety (the plaintiff), filed suit against the officer, alleging a claim of excessive force under 42 U.S.C. § 1983 and various North Carolina state law claims. The plaintiff also named as a defendant the City of Greensboro (the City), asserting the same state law claims.

The City filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and lack of personal jurisdiction under Rule 12(b)(2). According to the City, it was immune from suit under the doctrine of governmental immunity and had not waived that immunity.[1] The district court agreed and dismissed all claims against the City pursuant to Rule 12(b)(2).

Officer Sletten filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion after viewing a video recording of the encounter. Contrary to the plaintiff's allegations in her amended complaint, the court found based on the video that the stolen car driven by Crenshaw in a parking lot "was moving directly towards" the officer. *Doriety v. Sletten*, 684 F. Supp. 3d 439, 443 (M.D.N.C. 2023). The court held that Officer Sletten therefore was justified in

---

[1] The City's arguments under Rules 12(b)(1) and 12(b)(2) were identical. "[T]he City moved under both Rules 12(b)(1) and (2)" "[b]ecause the Supreme Court of North Carolina has not definitively decided whether a governmental immunity defense implicates subject matter or personal jurisdiction[.]"

2

firing one shot through the car's front windshield and other shots through the car's right passenger window.

We affirm the district court's dismissal of the claims against the City. However, we conclude that the district court erred in granting Officer Sletten's motion to dismiss, because the video recording did not "blatantly contradict" the allegations of the amended complaint. We hold that the plaintiff's allegations of excessive force under § 1983, when properly construed, are sufficient to state a claim. We therefore reverse the district court's judgment in favor of Officer Sletten on the excessive force claim and remand that claim to the court for further proceedings. Because the court did not individually address the state law claims against Officer Sletten but applied the same reasoning it used in dismissing the excessive force claim, we also reverse the judgment in favor of Officer Sletten on the state law claims and remand them to the district court.

I.

Initially, we agree with the City that the district court properly granted the City's motion to dismiss on the ground of governmental immunity. However, the district court should have granted the motion under Rule 12(b)(1), not Rule 12(b)(2).

Under North Carolina law, municipalities generally are entitled to governmental immunity for state law tort claims based on the conduct of the municipality's employees while performing a governmental function. *Clayton v. Branson*, 570 S.E.2d 253, 256-57 (N.C. Ct. App. 2002); *see Estate of Ladd v. Funderburk*, 879 S.E.2d 731, 734 (N.C. Ct.

3

App. 2022). Such immunity can be "waived" when the municipality is indemnified by an insurance policy. *Clayton*, 570 S.E.2d at 257. As the district court concluded in the present case, the City "presented uncontroverted evidence that it does not have liability insurance" that would cover the plaintiff's claims alleged against the City. *Doriety v. Sletten*, No. 1:23cv211, 2023 WL 4872570, at *1 (M.D.N.C. July 28, 2023); *see Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (explaining that "when a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist"). For the same reason, we agree with the district court's dismissal of the plaintiff's state law claims against the City on the basis of governmental immunity.

But while the district court correctly chose to dismiss those claims, it erred by doing so under Rule 12(b)(2). Our cases have addressed dismissals based on a municipality's governmental immunity from state-law claims as an issue of subject matter jurisdiction.[2] *See AGI Assocs., LLC v. City of Hickory*, 773 F.3d 576, 578 (4th Cir. 2014) (reviewing denial of North Carolina governmental immunity as an issue of subject matter jurisdiction); *see also Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205-06 (4th Cir. 2002) (reviewing application of governmental immunity to a multistate entity as an issue of subject matter jurisdiction). So the district court should have granted the City's motion to

---

[2] We observe that this approach is in tension with our recognition in other cases that "even though states can define the substantive rights that are enforced in diversity jurisdiction, they cannot limit the subject matter jurisdiction of federal courts[.]" *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 497 (4th Cir. 2024). But while it may be more appropriate to address the state-law immunities that apply to municipalities through the lens of Rule 12(b)(6), our prior decisions framing the issue as one pertaining to subject matter jurisdiction require us to address the issue through Rule 12(b)(1).

4

dismiss under Rule 12(b)(1), not 12(b)(2).  Because the district court's procedural mechanism did not alter its final disposition, we nonetheless affirm its dismissal of the plaintiff's claims against the City.

II.

A.

We turn now to consider the plaintiff's claims against Officer Sletten.  Before addressing the factual allegations and proceedings, we set forth the general principles applicable to a Fourth Amendment claim of excessive force under § 1983.  This statute "creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States."  *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023) (quoting *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013)).  In actions under § 1983, "[t]he defense of qualified immunity shields public officials from civil liability" unless the official (1) violated a statutory or constitutional right, and (2) that right was "'clearly established' at the time of the challenged conduct."  *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024).  In the present case, we focus on the first prong of this inquiry to consider whether the plaintiff presented a plausible claim that the officer violated Crenshaw's Fourth Amendment right protecting individuals from "unreasonable . . . seizures."  U.S. Const. amend. IV; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that courts have discretion to decide in which order to address the two prongs of qualified immunity).

5

Law enforcement officers are prohibited from using "excessive" force when attempting or executing a "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Meyers v. Baltimore County*, 713 F.3d 723, 732 (4th Cir. 2013). Such a determination depends on whether the use of force was "objective[ly]" reasonable. *Lewis*, 98 F.4th at 530-31 (citing *Graham*, 490 U.S. at 396, 399, and explaining that courts must balance the nature of the intrusion on the individual's Fourth Amendment rights against the government's interests); *see also Meyers*, 713 F.3d at 733.

We focus our review of the reasonableness of a seizure on the "moment that force is employed," and consider whether a reasonable officer in the same circumstances would have concluded that a threat existed to justify the particular use of force. *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005); *Graham*, 490 U.S. at 396 (listing three relevant factors to assess whether the use of force was reasonable, including the severity of the crime at issue, whether the suspect posed an immediate threat, and whether the suspect was actively resisting arrest or attempting to flee). We have explained that "an officer may reasonably apply deadly force to a fleeing suspect—even someone suspected of committing a serious felony—only if the officer has 'probable cause to believe that the suspect poses a significant [and immediate] threat of death or serious physical injury to the officer or others.'" *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3, 11 (1985)). With these principles in mind, we turn to consider the sufficiency of the plaintiff's allegations of excessive force. *See Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 163 (4th Cir. 2016).

B.

6

As described in the amended complaint, the events at issue occurred about 9 p.m. on August 21, 2022, when Officer Sletten responded to a report of a stolen car driven by Crenshaw (the stolen car). Officer Sletten was in his police vehicle, activated the vehicle's emergency lights,[3] and followed the stolen car into a parking lot. When the stolen car came to a stop, Officer Sletten got out of his vehicle and approached on foot. Crenshaw immediately began to drive the stolen car away from the officer at a "speed of three to five miles per hour." Officer Sletten returned to his vehicle and proceeded to follow the stolen car until it reached a "dead-end section" of the parking lot.

As alleged by the plaintiff, when Crenshaw started "to make a three-point turn," Officer Sletten parked his vehicle "at a 90[-]degree angle" and "within inches" of the stolen car in "an attempt to block" it. Crenshaw then tried to back the stolen car into a parking spot, but his car "swipe[d] the front end" of the patrol vehicle in which Officer Sletten was "still seated."

The plaintiff further alleged that Officer Sletten got out of his patrol vehicle, moved "to the rear" of his vehicle, and repeatedly ordered Crenshaw to "get on the ground." Crenshaw did not comply but completed his three-point turn and began to drive the vehicle away from the officer. "At that time, [some] passengers jumped out [of] the back seat" of the stolen car and ran away from Officer Sletten, while an additional passenger remained in the front passenger seat.

---

[3] Although the plaintiff did not allege in her complaint that Officer Sletten had activated his vehicle's emergency lights, the video makes plain that he did, and the plaintiff in her brief concedes that Sletten executed a traffic stop on the stolen car.

7

According to the plaintiff's allegations, as Crenshaw was attempting to elude Officer Sletten, the officer fired his weapon into the front windshield of the stolen car. At the time Officer Sletten first fired his weapon, the officer "was not in the [] path of [the] moving vehicle." The plaintiff further alleged that when Crenshaw drove past Officer Sletten "at a low rate of speed," the officer fired "additional shots" into the passenger side of the stolen car. The car then came to a stop.

The shots fired by Officer Sletten struck Crenshaw in his right forearm, his right-side rib cage, and the right side of his neck. Crenshaw died at the scene of the encounter. The plaintiff later filed suit against Officer Sletten on behalf of Crenshaw's estate. In addition to the excessive force claim brought under § 1983, the plaintiff also alleged state law claims of assault and battery, wrongful death, and, in the alternative, negligent wrongful death or gross negligence.

Officer Sletten filed a motion to dismiss the complaint under Rule 12(b)(6). In his motion, Officer Sletten contended that Crenshaw "accelerated" the stolen car "directly toward" the officer, and that Officer Sletten fired his weapon in self-defense. In making this contention, Officer Sletten relied on a "publicly available" video recording taken from the officer's body-worn camera (the video). The officer asked the district court to consider the video because "it is integral to and was apparently relied on" by the plaintiff in her complaint.

The plaintiff opposed the motion to dismiss but did not object to the court's consideration of the video and instead referred to the "unchallenged video[]" as being part

8

of "the record."[4]   The plaintiff nonetheless requested that the court credit her factual allegations to the extent they are "not contradicted by the video[]." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

The district court granted Officer Sletten's motion to dismiss, holding that the plaintiff failed to state a claim for excessive force. *Doriety*, 684 F. Supp. 3d at 443.  In reaching this result, the court considered the video as "integral" to the complaint, explaining that "all parties have relied" on the video. *Id.* at 441.  Certain conclusions based on footage in the video were central to the court's analysis. *Id.* at 441-42.

The court stated that "Crenshaw drove straight towards Officer Sletten, 'swip[ing]' the front of" the patrol vehicle with the stolen car.  *Id.* at 442 (citations omitted). Continuing, the court found that after driving the stolen car "directly towards the officer for approximately one second," the officer, "from a close distance," fired "several shots in immediate succession, one through the front windshield and others through the passenger side window" of the stolen car. *Id.* at 442, 443 (citations omitted).  The court further stated that "[a]s the car drove away, the officer fired no more shots." *Id.* at 443.

---

[4] The plaintiff argues for the first time on appeal that the district court erred in considering a different video than that relied on and discussed by the parties in their briefs. The district court had requested that Officer Sletten file a copy of the video that "was available on YouTube" and "relied upon" by the parties.  But the plaintiff contends that the online recording filed by the officer was "extremely prejudic[ial]" because it also included a "Critical Incident Community Briefing" with commentary and factual descriptions from a police department spokesperson.  In its opinion, the district court stated that it did not consider either the commentary or the factual descriptions in the video. *Doriety*, 684 F. Supp. 3d at 441 n.1.  We do not give this matter further consideration in view of our holding that the district court erred when it did not accept as true the plaintiff's allegations.

The district court compared these circumstances with those presented in *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005). *Doriety*, 684 F. Supp. 3d at 442-43. In *Waterman*, construing the facts in the plaintiff's favor at the summary judgment stage, we explained that the officers fired at a car after a high-speed chase "during which the driver had reportedly tried to run an officer off the road." *Williams*, 917 F.3d at 769 (summarizing *Waterman*, 393 F.3d at 474). When the officers first fired their weapons, they stood "in or immediately adjacent to the car's forward trajectory" as the car "began to accelerate." *Id.* (citation omitted). We concluded that the officers initially had not used excessive force, because these facts and circumstances caused the officers reasonably to conclude that the car was going to hit them in about "one second." *Waterman*, 393 F.3d at 475 n.6, 479 (explaining that the "closeness of the officers to the projected path" of the moving car was "crucial" to the conclusion that deadly force was justified). But we also concluded that the same officers *did use* excessive force by continuing to fire their weapons after the car had passed and it was no longer reasonable to think that the car could hit them. *Id.* at 482. Ultimately, we held under the clearly established prong that a reasonable officer would not have known at that time that he was prohibited from using deadly force moments after the threat of serious harm had been eliminated. *Id.* at 483.

Our holding in *Waterman* thus established that

(1) law enforcement officers may—under certain conditions—be justified in using deadly force against the driver of a car when they are in the car's trajectory and have reason to believe that the driver will imminently and intentionally run over them, but (2) the same officers violate the Fourth Amendment if they employ deadly force against the driver once they are no longer in the car's trajectory.

10

*Williams*, 917 F.3d at 770 (summarizing holdings in *Waterman*).

The district court in the present case also cited our decision in *Williams*, an excessive force case involving two law enforcement officers firing gunshots at a fleeing driver. *Doriety*, 684 F. Supp. 3d at 442-43; *Williams*, 917 F.3d at 766. In *Williams*, we explained that at the summary judgment stage it was unclear whether the two officers fired their weapons as the driver was heading toward an officer, was "passing" by that officer, or already had passed him. 917 F.3d at 766. We concluded that viewing the facts in the light most favorable to the plaintiff, the officers "started or continued to fire" at the driver "after they were no longer in the trajectory of" the moving car. *Id.* at 769. Applying *Waterman*, we held that these facts precluded summary judgment in favor of the officers on the § 1983 claim of excessive force. *Id.* at 769-70.

Comparing the present case to *Waterman* and *Williams*, the district court observed that even though Crenshaw had not led the officers on a high-speed chase, Crenshaw had refused to stop the stolen car upon command, had swiped the officer's patrol vehicle with the stolen car, and "undisput[ably]" had driven "straight towards Officer Sletten" when Officer Sletten fired "a few shots in quick and immediate succession." *Doriety*, 684 F. Supp. 3d at 442-43. Further, the district court concluded that it was apparent that Officer Sletten "stopped firing when it was clear [that] the [stolen] car had turned away" from the officer. *Id.* at 443. The district court held that the officer's "split-second judgment to fire a weapon when faced with an immediate and obvious threat of serious physical harm from a deadly weapon," namely, the stolen car, "was not unreasonable as a matter of law." *Id.* For the same reasons, the district court also dismissed Doriety's state law claims against

11

Officer Sletten and entered final judgment dismissing the case against him. *Id.* The plaintiff timely filed the present appeal.

C.

On appeal, the plaintiff contends that the district court erred in dismissing her complaint. She argues that the district court improperly substituted its own view of the facts derived from the video, and discounted the plaintiff's allegations even though the video did not plainly contradict them. According to the plaintiff, the district court improperly rejected her plausible allegation that the officer was not in the "path" of the stolen car when the officer first fired his weapon. Relying also on her allegations that the additional shots entered the car through its right passenger window, the plaintiff contends that she adequately alleged that Officer Sletten was standing to the side of the moving car and was not in danger at the time he fired those additional shots.

In response, Officer Sletten argues that the district court did not err in concluding that the plaintiff failed to plead a plausible claim of excessive force. Offering his own interpretation of the video,[5] Officer Sletten contends that Crenshaw drove his car "directly" at the officer, after earlier "spe[eding] away" from the officer and "swiping the front end" of the patrol vehicle. Officer Sletten argues that, based on these "facts," a reasonable officer could think that he faced an immediate threat of serious physical harm. Continuing, Officer Sletten asserts that these circumstances justified his "three-round burst [] fired

---

[5] We observe that although both parties' briefs in the district court included "still images," which purportedly were derived from the video, the district court did not reference these images in its ruling, and we decline to do so here.

12

within less than a single second."  Finally, Officer Sletten contends that the district court correctly found that he stopped firing his weapon "when it was clear [that] the car had turned away" from the officer.  We disagree with Officer Sletten's arguments.

D.

We review de novo the district court's decision granting a motion to dismiss.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6).  A plausible complaint contains facts that, as alleged, allow a court to draw the reasonable inference that the defendant is liable.  *Ashcroft*, 556 U.S. at 678.

We emphasize that a court's role under Rule 12(b)(6) is to evaluate the sufficiency of a complaint and that a court is not permitted at this stage of the proceedings to "resolve contests surrounding the facts" or "the merits of a claim."  *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Instead, the court generally must accept the facts as alleged as true and draw all reasonable inferences in favor of the plaintiff.  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

Federal Rule of Civil Procedure 12(d) ordinarily prohibits a court from considering evidence outside the pleadings on a motion to dismiss, unless the court converts the motion

13

to one for summary judgment.[6] Nonetheless, a court may consider a *document* outside the complaint at the motion to dismiss stage when the document is "integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. And if the plaintiff adopts the contents of an integral and authentic document, a court can credit "the document over conflicting allegations in the complaint." *Id.* at 167.

We have not previously addressed in a published decision whether and in what manner a trial court may consider a *video recording* at the motion to dismiss stage. But we have explained that when a district court considers a video recording of a police encounter at the summary judgment stage, a court must credit the plaintiff's version of the facts to the extent they are not "blatantly contradicted" by the recording. *Iko*, 535 F.3d at 230 (quoting *Scott*, 550 U.S. at 380); *see Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024). As the phrase "blatantly contradicts" implies, "[t]his standard 'is a very difficult one to satisfy'" and requires that the plaintiff's version of events be "utterly discredited" by the video recording. *Lewis*, 98 F.4th at 529 (citation omitted); *see also Harris v. Pittman*, 927 F.3d 266, 275-76 (4th Cir. 2019).

In agreement with our sister circuits, we now conclude that the same standard applies to a trial court's consideration of a video recording at the motion to dismiss stage. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *Baker v. City of Madison*, 67 F.4th 1268, 1277-78 (11th Cir. 2023); *see also Saalim v. Walmart, Inc.*, 97

---

[6] Rule 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

F.4th 995, 1002 (6th Cir. 2024) (judgment on the pleadings); *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (same). Accordingly, we hold that a district court can consider a video submitted at the motion to dismiss stage when (1) the video is "integral" to the complaint and its authenticity is not challenged, but (2) only to the extent that the video "clearly depicts a set of facts contrary to those alleged in the complaint," or "blatantly contradicts" the plaintiff's allegations, rendering the plaintiff's allegations implausible. *See Saalim*, 97 F.4th at 1002.

Whether the video was "integral" to the plaintiff's complaint in the present case "is not entirely clear." *Goines*, 822 F.3d at 166. But because any error was invited by the plaintiff's reliance on the video in response to Sletten's motion to dismiss, we do not address further this threshold requirement. *See Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997); *Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, 90 F.4th 217, 235 (4th Cir. 2024); *see also Goines*, 822 F.3d at 166, 168 (assuming without deciding that a report was integral to the complaint but holding that the court improperly treated the contents of the report as true). Instead, we conclude that the video "falls far below [the] high bar" of blatantly contradicting the plaintiff's allegations. *Lewis*, 98 F.4th at 529.

It is difficult to discern many critical details from the video. Initially, the video does not make clear Officer Sletten's location as he moved "to the rear" of his patrol vehicle or the distance between where he stood and the moving stolen car. *Doriety*, 684 F. Supp. 3d at 442; *compare Waterman*, 393 F.3d at 474-75, 479 (describing in feet a range of distance between the officers and the moving car and concluding that the record showed the officers "could have been run over in about one second if [the driver] had turned slightly toward

15

them"). Similarly, the video does not demonstrate the entire direction in which the stolen car was moving in relation to where the officer stood, including whether or when Crenshaw "turned" the stolen car to the left away from the officer. *See Williams*, 917 F.3d at 766. Given these uncertainties, the district court was not permitted to find contrary to the allegations and reasonable inferences arising from the amended complaint that Crenshaw drove the car "directly" at the officer "for approximately one second," and that the officer ceased firing his weapon when the stolen car turned away from the officer.

In addition, the video does not clearly depict at the time the officer fired the additional shots into the passenger window the location of the officer, the path of the stolen car, or the distance between the officer and the stolen car. *See Waterman*, 393 F.3d at 481 (explaining that "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated"). The district court should have construed the facts regarding these additional shots in accord with the plaintiff's plausible allegations and the reasonable inferences that could be drawn from those allegations. Had the district court done so, it would have considered at this stage of the proceedings that the stolen car was moving past the officer when he fired the additional shots, and that the officer fired multiple times into the side of the stolen car hitting Crenshaw on the right side of his body.

We hold that at the motion to dismiss stage the plaintiff's allegations are sufficient to allege a plausible claim of excessive force. Because the video recording did not blatantly contradict the plaintiff's allegations regarding the location of the officer and the trajectory of the moving car at the time each shot was fired, the district court erred in construing the

16

facts in a manner inconsistent with the plaintiff's allegations. Based on the plaintiff's allegations, a reasonable officer in Officer Sletten's position would not think that the stolen car, which was moving away from the officer, posed a significant and immediate threat of death or serious physical injury to the officer that would justify his conduct of firing one shot through the car's windshield and additional shots through the car's passenger window.[7] *See Waterman,* 393 F.3d at 482. We therefore reverse the district court's ruling on the excessive force claim. And because the court applied the same reasoning to dismiss the plaintiff's state law claims against Officer Sletten without addressing those claims individually, we reverse the court's dismissal of those claims and remand them for the court's consideration in view of our holding.[8]

\* \* \*

In reaching these conclusions in this case, we recognize that law enforcement officers regularly are placed in threatening situations and are not as a matter of course required to "ponder the[] many conflicting factors" or "risk[] losing their last chance to

---

[7] Officer Sletten argues that this Court could affirm the dismissal of the excessive force claim on an alternative basis, namely, the second prong of the qualified immunity inquiry, because there "was no clearly established right" preventing an officer from firing "a one-second-long three-round burst in self-defense when a suspect accelerates a car directly at that officer." *See Lewis*, 98 F.4th at 534 (describing the clearly established right prong). Because this argument rests on an improper construction of the facts at this point in the proceedings, we decline to consider this alternative argument.

[8] We decline to address Officer Sletten's separate request that we affirm the dismissal of the plaintiff's state law claims based on the doctrine of public official immunity. Because the district court did not consider the merits of this argument, we leave for the district court to address in the first instance Officer Sletten's request for application of this doctrine.

defend themselves" by "paus[ing] for even for an instant." *Id.* at 478.  Nonetheless, courts must be mindful not to short-circuit at the motion to dismiss stage a plaintiff's plausible claim of excessive force based on a video that does not blatantly contradict those allegations.

### III.

For these reasons, we affirm the district court's judgment in favor of the City.  We reverse the district court's judgment granting Officer Sletten's motion to dismiss the § 1983 claim, and we also reverse the court's judgment dismissing the state law claims.  We remand all the claims against Officer Sletten to the district court for further proceedings.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*